Good morning and may it please the Court, Robert Ellman for the State of Arizona. Your Honors, the linchpin in any Rule 24 analysis is of course the interest asserted by the intervener and if the district court misapprehends the nature of that interest it is bound to inject error into the proceedings and that's what happened here. The trial court incorrectly perceived that Arizona was but that was not so. In fact, Arizona was objecting only to a part of the Unitary Status Plan that did not remedy the Fourteenth Amendment violation and that becomes significant and it injects error into the process because if any aspect of the Unitary Status Plan to which the state objects exceeds the scope of the court's remedial authority then it necessarily impairs Arizona's interest in setting its own education policy. I think that the state's interest and the court's error both become clear when you consider two well-established precepts that the Supreme Court applies in school desegregation cases. The first is that the extent of a federal court's authority to act is strictly remedial and under the language in the Millikin 2 case anything the court orders has to directly address and relate to an established constitutional violation. To the contrary, the state's interest in education is plenary so it extends to every facet of education except those to which a remedy is necessary in order to correct the Fourteenth Amendment violation. Now in this case Arizona was not simply objecting that a culturally relevant course might conflict with is not a remedy for any finding below and that's clearly the case here Your Honor because in the course of 40 years there have only been two constitutional violations noticed by the court. The first is from 1978 and that is of course the desegregation aspect of the case because the district court had found that there was intentional segregation both in terms of student populations and 25 years and after the district court had concluded in 2008 that the Tucson Unified School District had actually achieved unitary status that was a field in this court reversed but it reversed solely upon holding that the Tucson Unified School District had failed to live up to the terms of the 1978 agreement and that specifically it was its failure to monitor, evaluate, and desegregation efforts by the district and the status of those efforts. So what one would expect in a remand of that nature is a court order that requires the school district to report regularly to the court and that specifies what information it must supply in those reports and that's not what you have here. You have a unitary status plan that requires the school district to develop specific curricula. Now the reason that exceeds the court's remedial authority in this case is because there is no nexus between development of culturally relevant curricula and any constitutional violation. It doesn't have anything to do with the original green factor violation which is a student assignment problem and it has nothing to do with the failure of the district to monitor, evaluate, and report on the status of desegregation. If there's no remedy at all because again it has to directly address and relate to a constitutional violation and as we stand here today the Tucson Unified School District insists that there is no green factor violation in its district and in fact there has been no finding to that effect for 36 years. Now this is not the first time that a district court has attempted to require a school district to develop specific curricula. Two of your sister circuits have faced this very problem before, the Second Circuit in the Yonkers case and the Tenth Circuit in the Keys case. In both of those instances the district court had required the school district to develop curricula and both of those courts vacated that aspect of the district's order. The Yonkers court concluded that requiring curricula is only appropriate upon extraordinary showings and again there's no finding here of even a green factor violation and in Keys the court was careful to point out that nothing in the Constitution requires a school district to create courses tailored to ethnic groups. Now in this instance given the absence of any nexus if you look to the Supreme Court authority we're not suggesting that there could never be an instance where a district court could not properly order a district to create this curricula but it only happens and Millikin 2 serves as an example if you have culturally isolated groups and you have, and I just want to make sure that I'm quoting this correctly, you have a segregated school system that is so pervasively and persistently segregated that the district court finds a need for educational components that flows directly from constitutional violations by state and local officials and you have nothing resembling that in this case, Your Honor, and of course part of the collateral damage of misperceiving what the state was trying to assert as its interest is the equally erroneous conclusion that the Tucson Unified School District could somehow adequately represent the state's interest in the culturally relevant curricula because it believes that it exceeded the scope of the federal courts authority but the Tucson Unified School District changed its position and now embraces that culturally relevant curricula requirement and the Tucson Unified School District respectfully has no stake in protecting the scope of the state's prerogative to set its own the kind of curriculum program to consider in here? Would Arizona say that would be unconstitutional? Yes, I believe you're referring to the Flores case, Your Honor, which is actually set for argument in this court in January and of all the requirements in the Arizona statute that was implicated by the proceedings there was only one but the other aspects of it which prevent the school district to teach anything that promotes resentment toward race or class of people was upheld as constitutional and also the prohibition against advocating ethnic solidarity instead of the treatment of people. That's the question of whether the plan would violate Arizona law if the school district adopts it, but I was asking whether it would be unconstitutional. For the school district to adopt voluntarily the type of plan that we're considering here. Well, it would if the plan is adopted by federal compulsion of the district court, Your Honor, regardless whether the Tucson School District agrees with it because the Tucson School District can't waive the state's ability to protect its interests in that prerogative. Now, the current Tucson Unified School District Governing Board may agree with the policy preference of the plaintiffs and of the Department of Justice, but the state of Arizona does not. And as long as that's the case, their interests diverge in any order that compels Tucson to develop these curricula whether Tucson agrees with it or not still exceeds the scope of the court's remedial authority. So it would still be unconstitutional unless the state of Arizona were to waive it and of course it hasn't delegated that prerogative to the federal government in this case or to the Tucson Unified School District. And then finally, the idea that requiring the development of culturally relevant curricula doesn't actually impair any Arizona interest is palpably wrong because now that you have an order from the district court that actually requires the school district to adopt it, there has already been an encroachment on the state's education policy prerogative. So the damage is already done and of course it invites repetitive litigation. To sum up in the remainder of my time, Your Honor, if the court agrees with the state of Arizona's position that requiring development of culturally relevant courses exceeds the scope of the district court's authority under these circumstances, then the appropriate remedy is to vacate the portion of the order that requires the development of that course. And there wouldn't be a need for any further remand. Now, if for whatever reason the court were to conclude that culturally relevant courses are within the legitimate scope of authority for the district court, a remand would nevertheless be necessary because what you would then have is an authorized usurpation of what would otherwise be Arizona's exclusive prerogative. So surely Arizona would have to have a place in the proceedings to participate so that it could challenge many of the hotly disputed factual issues in this case that end up in that order. So that we know that if there's an imperative to correct a vestige of discrimination that again hasn't been shown here. But if the court were to conclude that, then Arizona would surely have the right to contest portions of it that they felt would not eradicate the vestiges of prior segregation. You are litigating, as you mentioned in this court, the issue of the validity of the Arizona statute. Correct, Your Honor. And so we can't assume that even though the district court said that only one provision of your statute was unconstitutional, the plaintiffs in that case are still contending that other sections are. Isn't it appropriate to have the question of what the constitutionality of Arizona's interest in these types of curricula are? Is it appropriate to have that litigated in the other cases? Well, it's certainly appropriate to litigate it in the other cases, Your Honor, because they're challenging the substance of the statute itself. And whether it's applied to Tucson or any other school district in requiring a district to meet the state's criteria. But it wouldn't affect the court's disposition of this case because the aspect of the plan that the state is objecting to doesn't have to do with the constitutionality of its statute. It's kind of a red herring in this case. The court treated Arizona's interest as simply making sure that anything in the Unitary Status Plan didn't contravene an Arizona statute. And that would, of course, if that were correct, and it isn't, that would leave the court to think that it was simply a matter of whether Arizona's statute was constitutional and whether or not that could overcome the 14th Amendment imperative. Which, of course, it can't. But that's not what Arizona's complaining about in this case. Thank you. Thank you, Your Honor. Good morning, Your Honors. May I please the court? My name is Thomas Fines, and I represent the Mendoza Plaintiffs' Appellees in this rather unusual appeal. The appeal before you is unusual in at least two critical respects. First, the state is at pains to recharacterize what is before the court as a renewed motion to intervene rather than what it is, which is a motion for reconsideration of a properly denied and with sufficient time having passed a decision on intervention that had become the law of the case. And secondly, while the state invokes the 10th Amendment and talks about its sovereign right to establish education policy, it is decidedly inattentive to two other sovereign decisions by the state of Arizona. First, the decision by the state to delegate, through statute, by the legislature, decisions over curricular development to school districts, including, in this case, the Tucson Unified School District. And secondly, the established process under state constitutional law, as well as specifically under Arizona Revised Statute 15-112, to determine the proper statutory construction of that new law potentially restricting ethnic studies courses. Now, these two unusual elements of the appeal have critical relation to the issues before the court. First, with respect to whether this is a motion for reconsideration or a quote-unquote renewed motion to intervene, in fact, it has to be seen as a motion to reconsider. The state had moved to intervene. The decision was against it. It failed to appeal. It allowed the time to appeal to lapse before it came back before the district court and before it made any movements to come before the court of appeals. That then converted that decision to law of the case. It then had to ask for reconsideration by the district court. So, the question before this court is simply whether the district court abused its discretion in applying Local Rule 7.2g, which would allow it to reconsider only on a showing of manifest error, and the district court concluded that there was no manifest injustice, or the showing of new facts, significant new facts, affecting the decision of the court. And here, the district court also concluded that while there were new circumstances, specifically it identified the development of the Unitary Status Plan, and the state, in fact, had brought before the court its assertion that a change of facts of significance was a change in the composition of the Tucson Unified School District Board of Education, and, in fact, the district court properly concluded that those would not change a decision on intervention. To be clear, Your Honors, the interest being asserted below in the district court by the state was not about the 14th Amendment, was not about preventing any violation of the 14th Amendment by the district court, but was, in fact, solely about that state law, Arizona Revised Statute 15-112. The very beginning of their initial motion to intervene states that they seek to intervene in this action on a limited basis as a matter of right to ensure that the special master's proposed curricular revisions for in-depth ethnic studies courses in the Unitary Status Plan do not violate state law. Nothing in that sentence says anything about protecting against potential violations of the 14th Amendment in adopting a remedy for a proven violation by the district court. With respect to that interest in enforcing Section 15-112, in fact, the state's interest would not be impaired by this matter, for two critical reasons that I've mentioned previously. First, the state has made the decision, a decision equally worthy of respect under the 10th Amendment, to delegate its authority to develop curriculum to school districts. It does that in Arizona Revised Statute 15-341, cited by the school district in this appeal. It does that and could withdraw that authority, but has not taken any steps other than what may have been done through 15-112 to withdraw that authority from any school district, much less the Tucson Unified School District. Therefore, its interest asserted here in enforcing that state law could not be impaired because it could simply decide to remove the discretion that it has granted and is not required constitutionally or otherwise to grant to school districts to develop curriculum. Second and equally important, there is an established process to determine what is the authoritative interpretation of that Statute 15-112. Specifically, it's already been invoked against Tucson Unified School District prior to the development of this Unitary Status Plan. There is an opportunity, once the Superintendent of Public Instruction informs any school district that he believes that it is violating that statute through one of its courses. In the case of Tucson, it was with the Mexican American Studies courses, to go to an administrative law judge and contest that. Beyond that, if the school district or the state disagree, the conclusion by the administrative law judge then goes to the state court system, an appeal as you would see in many other administrative matters around the country. It is then up to the state courts to determine what is the appropriate interpretation of 15-112 and how does it apply to the specific curriculum developed here in Tucson or anywhere else. That process for authoritatively constructing 15-112 is at least as worthy of respect as any interest asserted in developing education policy. While the federal court, the district court is developing those curricula and those programs, am I to go into the state court and ask the state court through the ALJ to declare the plan that the federal court is developing contrary to Arizona law? That is theoretically what could occur, Your Honor. I doubt that it would occur. I believe that the assertive interpretation of that statute by the state, which appears to be that any ethnic studies course whatsoever violates the law, I think that's an over-reading of the statute. I don't think it would prevail through that state court process. But that is the process to determine if the state's currently asserted reading is accurate or not. Rather than going into federal court and having a federal court in the first instance attempt to interpret whether there is a violation of Arizona law and then secondarily, the critical question, does federal law, the mandates of the 14th Amendment, override that state law? But in the first instance, the state law should be interpreted. How much of that is being litigated presently in this court in the sentence case? The question of the constitutionality of that statute is being adjudicated separately. But the question of how broadly it should be interpreted, even if constitutional, is a separate question not being litigated in that other action that would more appropriately be determined through the state processes that the state of Arizona, in its sovereign authority, has established for interpreting state law. So play this out for me. Let's assume that the state pursues the remedies that you've identified and is successful in reaching a state court decision favoring its interpretation. Then what? At that point, and only at that point, and once again, Your Honor, I don't think we'll get there. I think the state is overreading the statute. But if we do get to that point, then of course, we as plaintiffs, if we still want to see that curriculum as part of the remedy, we would then have to introduce the state into litigation in federal court to resolve the issue of whether the 14th Amendment overrides that now authoritative interpretation of the state statute. But again, I don't think we get there. And the proper way to get there is to follow the state's established process for authoritatively construing its own law. Right. But wouldn't the appropriate remedy at that juncture, if the state has pursued the state remedies and is successful, is to allow the state to intervene in this action? Well, I think, Your Honor, I think... As opposed to initiating a new action. What is more likely to happen is that the plaintiffs would probably seek to file an amended complaint to name them as a defendant if we still wish to have the curricular remedy as part of the broad set of remedies in this case. Plaintiffs might well conclude we're no longer going to pursue that as part of the remedies, no need to bring the state in, but I presume that's how it would occur. They could fall out of the unitary status plan. There's about three ifs between here and there, but this could be severed off of the plan and the unitary status plan couldn't. And if not, then to Judge Thomas's point, there would be some mechanism, actually several, opportunities for the state to intervene, wouldn't it? Yes, down the line, that is correct. If this remained a part of the remedy and there was an authoritative construction of the state law that indicated a clear conflict with what was going on in this case, we would have to resolve that conflict by somehow bringing the state into litigation. The state wants a place at the table now, so whatever other remedies they may want to pursue, they may pursue. The problem with the state's intervention at this point is it would unduly delay the further progress of this now 40-year-old case because they are taking a position, we believe an extreme position, that any and all ethnic studies curriculum violates the state law. We don't think that's an appropriate reading of the state law, but this is not the appropriate venue to decide that. The district court is not the appropriate venue to decide that. So, Your Honors, I do want to leave the time for the United States to address the issues, so with that we urge you to affirm the district court's decision to deny the motion for reconsideration of intervention. Do you want to give the United States 29 seconds? I believe now that they have their independent five minutes, and I want to make sure they have that. I'm believing in their sovereign authority as well. Good morning. Holly Thomas for the United States. I don't have any note of what we did as far as allocating time, but you're giving an independent five minutes? Yes. Out of the ten or out of the five? Out of the ten. We'll give you the five minutes minus the 27 seconds. Okay. Thank you. Go ahead. As Counsel for Mendoza-Puente stated, district court here did not abuse its discretion in denying the second motion for reconsideration of the motion for intervention, which is all that's before this court today. Arizona does not have a significantly protectable interest in this suit, but even if it did, that interest is not impaired by denial of intervention here. Arizona expressed an interest in ensuring that the ethnic studies curricula and the unitary status plan did not violate state law. That interest is both remote and speculative, and therefore does not meet the requirements for intervention. The MAPS program, the Mexican American Studies program, that Arizona repeatedly talks about in its pleadings in the district court, was canceled by TUSD. It has not been resurrected. The school district has not made any moves to resurrect it, and indeed the district court has made clear that that program will not be reinstated. Well, not the existing program, but isn't it fair to say, Counsel, that there was a representation by the special master that some sort of culturally relevant program will be? That's part of the plan, isn't it? That's correct. There was representation by the special master that the culturally relevant curriculum and the multicultural curriculum would be part of the plan, but it's purely speculative that those courses will violate Arizona. So what happens if they do adopt something like that? Then what does the state do? There's a separate administrative process that the state can avail itself of to communicate with TUSD about any concerns it may have regarding the content of any curriculum. The content of the curriculum is actually not specified in the unitary status plan. It's specified as just the development of those courses. And the fact that Arizona, in fact, was able to address its concerns regarding the Mexican-American studies program through this administrative process demonstrates, in fact, why intervention in this suit is not necessary or why intervention at the present time is not necessary. Well, isn't your argument... That's just my point. Isn't your argument that intervention isn't necessary now or wasn't necessary at the time? In other words, that the court got it right. But it's not so hard to foresee that there could come a time if an ethics studies program is adopted or some sort of culturally relevant program is adopted that the state finds objectionable, it's not your position the state wouldn't have a say in that culture, is it? No, that's not our position. If the time comes when the state feels that any culturally relevant curricula violated state laws, it's free to move to intervene again in the future. We have no position at this time about whether that would be appropriate or not. The question here is only whether the court abused its discretion in denying that second motion for reconsideration and finding that the changed circumstances cited by the state did not make intervention appropriate. Is your position, then, that the state's argument is premature? It was premature as the district court held, and I think the district court didn't abuse its discretion in so holding. There, again, was no content to the curricula specified in that unitary status plan. So as the district court held, intervention would have been to essentially have an argument litigating the merits of the MAS program, which really isn't at issue here in this case. Is it now at any stage where there is a plan now that provides for the curriculum, or is it still being developed? There is, and the curriculum has been developed at the high school level. The unitary status plan calls for the curriculum to be rolled out slowly first in high schools then middle schools, then elementary schools. So that process is still ongoing, and Arizona still has every opportunity to be involved in that process through its state administrative procedures at this point. But those procedures could conflict with what the district court order is, true? They may or they may not. It's speculative whether... Right, but, I mean, let's say that the state takes you up on the invitation, contests it through state court. I assume that you would probably intervene and say, no, you can't do that because there's a federal court order. We don't have a position on what we would do until and unless that happens. At this point, we don't have a position on what would happen if Arizona were to challenge those courses. As Mr. Stein said, we might determine that... We didn't have any objections to that. I just can't say at this point where our position would be. But in any case, it's clear that the district court didn't abuse its discretion by holding that intervention was not appropriate to have those disputes before any curriculum content was developed. And if there are no further questions, I'll rest on the brief. Thank you very much. Thank you. I will be very brief, Your Honor. An Arizona administrative law judge obviously can't vacate part of the district court's order. Arizona's actions in this case cannot have been premature because the damage is already done. If, in fact, the district court's unitary status plan exceeds its authority, then there was no mention of that in the argument we just heard. Curricula is ultimately the state's responsibility. Only the state of Arizona can command the school district to develop a particular type of curricula. Curricula is... There's some discretion on how you develop it, but it has to meet the state standards that are highly specific for each grade level. And, in fact, if a district fails to do that, the state steps in, takes over the district, and does everything, including curricular development. Now, the nature of the motion below turns on the language of the court's order in disposing of it in the matters addressed there. And I just want to point out that when the district court issued its order denying what was captioned as the second motion for reconsideration, it said that it was timely in respect to the state's ability to affect the terms and provisions contained in the USB. Now, that's an analysis for a motion to intervene. It's not analysis under Local Rule 7.2 for whether there was a good cause. Also, the court used language that's consistent with the denial of a motion to intervene. In fact, it specifically says at page 17 that it's denying the state's request to intervene, and that it's reaffirming its decision to deny the intervention of the state of Arizona, as opposed to whether reconsideration is timely under the circumstances. Now, as for the matters addressed, the court certainly had discretion to get to the merits of the motion and address all of the Rule 24a and CR effectors, and that's what it did. The motion argued that the Unitary Status Plan did exceed the scope of the court's remedial authority. And I refer you to ER Docket 1418 at page 4. And perhaps most importantly, the court rejected it on the merits. The court said, and I quote, the court does not exceed its authority by approving and adopting the USP that contains the curricular provisions. As far as Arizona's raising that point below, I just want to point the court to the parts of the record where Arizona did indeed argue that the USP was exceeding the scope of its authority. The original motion to intervene, and I'm talking about Volume 4 Docket 1367 at page 2, the state specifically argued that the ethnic studies and culturally relevant curricula, and I'm quoting now, unconstitutionally usurp Arizona's right to administer its laws. If you look at the state's objections to the proposed Unitary Status Plan, and now I'm referring to Excerpts Volume 3 Docket 1409 at page 4, the state argued that in the long history of this case, again I'm quoting, this court has made no findings that the curricula and courses offered by Tucson Unified School District violated any student's constitutional rights. The proposed remedy of creating specific courses for African American and Latino students is thus not a remedy that is required to vindicate any constitutional guarantees. And in case there's any doubt about whether this was litigated, substantively below, I want to point you to one more document and note that the Mendoza Plaintiffs responded robustly to this argument about the scope of the District Court's authority. Excerpts of Record Volume 4, Docket 1370, beginning at page 2, that response devotes four pages exclusively to the Tenth Amendment argument. And finally, and most importantly, the District Court addressed and rejected it in its final order which is the order we're appealing from. The Court said, and this is at page 16 of its order which appears at Volume 1 of the excerpts, quote, The Court does not exceed its authority by approving and adopting the Unitary Status Plan containing curricular provisions. Now that is the issue before the Court and the issue that the Court ruled upon. I do not see how that issue can't be properly in front of this Court. The final point is that the state contention has been mischaracterized here today. It is not that any culturally relevant curricula would violate an Arizona statute. There are certainly types of culturally relevant courses that would conform to Arizona law. But, if you design one specifically centered on the cultural experiences of African American and Latino students, then you are culturally isolating them and you are teaching them only about one culture. And that is not merely a violation of Arizona law. That is directly contrary to what the Supreme Court was attempting to remedy in the Milliken II case. The Detroit school system had so pervasively and persistently segregated African American students   culturally isolated. They were not part of the mainstream of students taught in that district in other schools and it developed in them and they were not part of the mainstream and I am taking all of this out of Milliken II it developed in them attitudes, habits of speech, etc. that were outside of the environment in which they would need to compete in the post-secondary world. In this case, you have a unitary status plan that is attempting to achieve exactly the opposite. You have students who are presently in the mainstream and you have a culturally relevant curriculum plan that specifically centers on one ethnic or racial group and teaches that group only about that culture. That is contrary not only to Arizona state law but to United States Supreme Court precedent. Thank you. Thank you, Captain.  of the case are a separate group of lawyers. All right, well, we can start with the first group of lawyers and then we can start with the second group   and  we can start with the first group of lawyers and then we can start with the second group of lawyers and then     third      we can start with the fourth group of lawyers and then we can start with the fifth group of lawyers and then we can start with the    lawyers and then we can start with the seventh group of lawyers and then we can start with the fifth group  lawyers    start with   group of lawyers and then we can start with the seventh group of lawyers and then we can start with the          with the ninth group of lawyers and then we can start with the tenth group of lawyers and then we can start   tenth group   and  we can start with the eleventh group of lawyers and then we can start with the twelfth group of       with  twelfth group of lawyers and then we can start with the twelfth group of lawyers and then we can start with the twelfth group of lawyers and  we can then we can start  the twelfth group of lawyers and then we can start with the eleventh group of lawyers and then we can start with the  group   and then we can  of   then we can start with the eleventh group of lawyers and then we can start with the twelfth group of lawyers and then we           we can start with lawyers and then we    the  lawyers    can start with the of    we can start with the twelfth group of lawyers and then we can start with the eleventh group of lawyers  then we can  with the twelfth   lawyers and then we can start with the twelfth group of lawyers and then we can start with the twelfth group of    we can  with the twelfth group the twelfth group of  and then we can with the twelfth group   and then we and then we can    twelfth group of lawyers twelfth group of lawyers  then then we can start    group  lawyers and   can start with the with the twelfth group  lawyers group of lawyers    can start    group of lawyers start with the twelfth   lawyers can start with  twelfth group of start with the twelfth of of lawyers and then  can start with then  can start with the
judges: Reinhardt, Thomas, Christen